IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JIMMIE JOSHUA

    Plaintiff,

v.                                         Civil Action No.: 22-cv-24

[Trial by Jury Demanded]

ISAAC WACHHOLZ
(In his individual capacity),
SEAN SHOTLIFF
(In his individual capacity),
B. POQUETTE
(In his individual capacity), and
TRAVIS MCPHERSON
(In his individual capacity),
DANE COUNTY,
WELLPATH MENTAL AND MEDICAL
HEALTHCARE,
"NURSE MINDY"
(In her individual capacity),

    Defendants.

## COMPLAINT

**NOW COMES THE PLAINTIFF,** Jimmie Joshua, through his attorneys, Gingras, Thomsen, and Wachs LLP, by Paul A. Kinne, and offer the following as the Complaint in this matter:

## INTRODUCTION

1.     This is a civil rights action under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights to be free of excessive force and for the deliberate indifference in denying Plaintiff adequate medical care in violation of the due process

clause as secured by the Fourteenth Amendment and Eighth Amendment of the United States Constitution.

## NATURE OF PROCEEDINGS

2. Plaintiffs bring this case via 42 U.S.C. § 1983, under the Eighth and Fourteenth Amendments of the United States Constitution. Plaintiff alleges Defendant Deputy Wachholz used excessive force by dragging Mr. Joshua out of his cell and repeatedly punching him and Defendants Deputy Shotliff and Deputy Poquette were deliberately indifferent by recklessly disregarding that Mr. Joshua was suffering from substantial harm.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. sec. 1331 and 28 U.S.C. § 1343(a)(3). because all claims arise under federal law.

4. Venue is proper under 28 U.S.C. sec. 1391 in that all of the acts alleged to have been committed by the Defendants occurred within the Western District of Wisconsin.

## PARTIES

5. Plaintiff Jimmie Joshua is an adult resident of the State Wisconsin.

6. Defendant Isaac Wachholz is the Deputy that was assigned to work in 6 East of the Dane County Jail from 3:00pm to 11:00pm the day of the incident. The claims against him are in his individual capacity, and the conduct attributed to him was taken under color of law, within the scope of his employment, and it was intentional.

7. Defendant B. Poquette is the Deputy that assisted Deputy Wachholz in the incident where Jimmie Joshua was injured. The claims against him are in his individual capacity, and the conduct attributed to him was taken under color of law, within the scope of his employment, and it was intentional.

8. Defendant Sean Shotliff is the Deputy that radioed for all available deputies and assisted Deputy Wachholz in the incident where Jimmie Joshua was injured. The claims against him are in his individual capacity, and the conduct attributed to him was taken under color of law, within the scope of his employment, and it was intentional.

9. Defendant Sergeant Travis McPherson was present during the incident as well as aware of the entire situation, and yet failed to aid Jimmie Joshua. The claims against him are in his individual capacity, and the conduct attributed to him was taken under color of law, within the scope of his employment, and it was intentional.

10. Wellpath Mental and Medical Healthcare is the health care provider hired by the Dane County to provide medical care in the Dane County Jail. All conduct attributed to it in this complaint was taken under color of law.

11. Dane County is a municipal corporation organized according to state law.

12. Defendant Nurse Mindy is the Dane County nurse employed by Wellpath Mental and Medical Healthcare (WMMH) that first assessed that Mr. Joshua was not seriously injured and gave confirmation he did not need additional medical assistance. She assessed him again by taking his temperature and failing to examine his injured hip. The claims against her are in her individual capacity, and the conduct attributed to her was taken under color of law, within the scope of her employment, and it was intentional.

## FACTS

**I.   USE OF EXCESSIVE FORCE BY DEPUTIES WACCHOLZ, SHOTLIFF, POQUETTE, AND ABC, DEF, GHI.**

13.   Jimmie Joshua was in the Dane County Jail placed in an isolated unit as he had previously tested positive for COVID-19.

14.   Jimmie had been suffering from the Coronavirus disease with heavy symptoms of loss of sense and taste.

15.   Mr. Joshua was given an hour out of his cell daily due to the Coronavirus. Sometimes the deputies would allow for inmates to stay out of the cell for more than an hour.

16.   On December 23, 2020, Mr. Joshua was on his hour outside of the cell awaiting a video call from his partner.

17.   Deputy Wachholz told Mr. Joshua that it was time to lock down in which Mr. Joshua responded by simply asking "why he had to lockdown on his hour out," as the other inmates were allowed more than an hour that evening.

18.   Deputy Wachholz interpreted Mr. Joshua as being disrespectful and in an aggressive tone Deputy Wachholz stated to Mr. Joshua, "Well you need to go fuckin lock down now."

19.   Mr. Joshua responded to Deputy Wachholz stating, "You know what? I am not locking down, not the way that you're talking to me. You're talking to me recklessly and you cussing me out for no reason." Mr. Joshua let Deputy Wachholz know that he was disrespectful, and he did not appreciate that.



20. Surveillance footage does not include sound, but the exchange between Deputy Wachholz and Mr. Joshua occurred for about two minutes before Deputy Wachholz started approaching Mr. Joshua as Mr. Joshua was moving backward into his cell.



21. Mr. Joshua was walking back into his cell because he felt threatened and knew in this situation, he had no control. To prevent from being harmed, Mr. Joshua was trying to go back into his cell and close the door, which was exactly what Deputy Wachholz told him to do.

22. Before Mr. Joshua could even get fully back into his cell, Deputy Wachholz yanked Mr. Joshua and tossed him onto the ground inside Mr. Joshua's cell.



23. Deputy Shotliff came running to assist Deputy Wachholz in moving Mr. Joshua to cell 717. At this time, Deputy Shotliff also radioed for "all available deputies" to come assist in cell 705.



24. Deputy Poquette was the first available deputy to help. He entered cell 705 with Deputy Shotliff.

7



25. As the deputies were in the cell, the video surveillance does not capture what occurred in the jail cell, but upon information and belief, Mr. Joshua alleges that one deputy grasped his left leg and lifted it in the cell.

26. Deputies Wachholz, Shotliff, and Poquette forced Mr. Joshua to the ground outside of his cell where he landed on his right side with his arms behind his back and the weight of two deputies on top of him.



27.     Mr. Joshua knew as soon as he was thrown onto the ground by the deputies, he was seriously injured. Mr. Joshua states when he was slammed into the ground on his right side, he felt his hip was broken because he could feel it popping out of his skin.

28.     Video Surveillance shows that A, B, C deputies came to assist in moving Mr. Joshua to cell 717. They were restraining Mr. Joshua by pinning him down to the ground.



29. Mr. Joshua states, "my leg was so jacked up that I couldn't unbend my knee, I couldn't straighten my leg out. So I'm telling the deputies, 'Please get off me. I think my hip is broke.'"

30. Mr. Joshua was in extreme pain as he was screaming and crying to get the deputies who had their knees on his neck, back, and legs to get off him. The deputies responded by stating, "Stop resisting," as Mr. Joshua was in an uncomfortable position with a broken hip.

31. Defendant Nurse Mindy was called to check on Mr. Joshua, but nothing was done to acknowledge that he had a broken hip. She simply checked his vitals and concluded that he was not severely injured.



32. After five minutes, the deputies lifted Mr. Joshua into a restraint chair where Mr. Joshua expressed thoughts of self-harm. Mr. Joshua told Defendant Sergeant McPherson, "I want to go on suicide watch. I don't feel safe around you and your deputies, I don't feel safe here in the jail. I feel like harming myself. You guys are not giving me medical attention and I feel like I'm going to die anyway so I want to go to suicide watch."

33. Sergeant McPherson disregarded the fact that Mr. Joshua was severely injured and needing medical attention and advised the deputies to take him to another cell where inmates who are thought to be suicidal can be observed more closely and placed in greater isolation.



34. Mr. Joshua was under mental distress and depressed due to the failure of the deputies to give adequate medical attention.

**II.  DELIBERATE INDIFFERENCE TOWARD MR. JOSHUA DUE TO LACK OF CARE FOR HIS HIP.**

35. With the assistance of six deputies, Deputies Shotliff, Poquette, Wachholz, and others moved Mr. Joshua to the sixth floor where inmates who were said to be suicidal could be observed more closely.

36. The deputies placed Mr. Joshua on a mat on his left side and cut off his clothes, leaving him naked in the isolated cell.

37. Over the next hour, Mr. Joshua propped himself up and banged on the window of the cell to get the attention of staff so he could receive medical attention. The deputies instead tried to put him in a restraint chair and when they could not move him because he was in so much pain, the deputies left him in the isolated cell.

38. About seven minutes later, deputies returned with another nurse who checked Mr. Joshua's temperature and failed to examine his hip, which video surveillance clearly shows her not examining his hip.

39. Over the course of the night, deputies placed cups of water through the lower flap of the door, but as Mr. Joshua's hip was severely injured, he was unable to reach the cup. He was also unable to reach the toilet, and as a result urinated and defecated on himself during the night.

40. All night, Mr. Joshua was in excruciating pain and was struggling to get some rest due to his injured hip.

41. The next morning, Mr. Joshua's fiancée, Ms. Allison Davidson, realized she never received her usual good morning message via the jail tablet system. Concerned, Ms. Davidson initiated a video call to Mr. Joshua.

42. One of the inmates was on his hour outside of his cell and told Mr. Joshua that he received a phone call, but Mr. Joshua stated, "I can't get up, I can't come to my door, I can't move…Can you answer it for me and let her know everything that's going on."

43. Ms. Davidson said she could hear Mr. Joshua in the background of the video call explaining what happened which led her to call the jail.

44. The sergeant that Ms. Davidson spoke to stated, "We don't do that here, Jimmie's probably lying."

45. It was not until Ms. Davidson called the jail, that another deputy and nurse came into Mr. Joshua's cell and determined that he needed medical attention.

46. The nurse and deputy tried to help Mr. Joshua onto a wheelchair, but he was unable to sit down in the wheelchair and had to kneel on it and hold the bars of the cell to sit up straight in the wheelchair.

47. The nurse attempted to use jail equipment to administer an x-ray, but Mr. Joshua was unable to move his legs enough to allow the jail equipment to work.

48. After awaiting more than 16 hours, Mr. Joshua was finally transported to University of Wisconsin Hospital for medical attention on December 24, 2020, approximately at 11:07am.

49. An emergency room physician noted on his chart that Mr. Joshua's hip had been dislocated for "quite a while" by the time he was at the hospital the next morning.

50. The medical records further show that he was diagnosed with a dislocated hip, fracture of the hip socket, and nerve damage which required reconstructive surgery.

51. Further, the orthopedic surgeon wrote in Joshua's chart, "He was very upset with the events surrounding his injury. I can understand why."

52. Mr. Joshua was admitted to emergency orthopedic surgery at 4:30pm on December 24, where the doctor repaired his hip by placing a metal plate and eight screws in his right hip.

53. Mr. Joshua remained at the UW Hospital until December 31, 2020, and was discharged back to the jail thereafter.

54. The injury to Mr. Joshua's hip has caused permanent nerve damage where he will eventually need a full hip and knee replacement. He is not able to walk the same

and has to use a walker. Further, he has lost his ability to exercise as he cannot squat or move his legs in a 90-degree angle.

55. Mr. Joshua requires daily medication and physical therapy. Unfortunately, the jail staff has replaced his walker with a cane which is not sufficient to stabilize him, and staff is failing to provide Mr. Joshua with his prescribed medication and physical therapy.

56. The orthopedic surgeon that conducted Mr. Joshua's surgery recommended, as well as informed the jail staff, that physical therapy was recommended to improve his mobility after hip reconstruction surgery, but this was denied.

57. Mr. Joshua has gone through a traumatic experience in having his hip broken while suffering from COVID-19 due to the officers' use of excessive force as well as the failure to provide medical assistance in a timely manner.

## CLAIM FOR RELIEF AGAINST DEFENDANTS DEPUTY WACHHOLZ, DEPUTY SHOTLIFF, AND DEPUTY POQUETTE FOR USE OF EXCESSIVE FORCE ON PLAINTIFF JIMMIE JOSHUA IN VIOLATION OF THE FOURTEENTH AMENDMENT

58. Plaintiff realleges and incorporates by reference, all preceding allegations.

59. At all relevant times, Defendant Deputies Wachholz, Shotliff, and Poquette were a "person" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Jimmie Joshua of his constitutional rights.

60. At all times material hereto, Defendant Deputy Wachholz used unnecessary, excessive force by forcefully trying to pull Mr. Joshua out of his cell causing Mr. Joshua to fall extremely hard on the hard flooring inside his cell.

61. Deputies Shotliff and Poquette ran in to assist Deputy Wachholz, all three deputies forcefully tugged on Mr. Joshua and removed him from his cell, throwing him onto the hard flooring outside of his cell causing Mr. Joshua's hip to be broken.

62. The described conduct of Defendant Deputy Wachholz, Shotliff, and Poquette, as set forth above, was a cause of the plaintiff's severe injuries, losses and damages as set forth herein.

63. The Defendants are liable in violation of the rights set forth under Fourteenth Amendment to the United States Constitution.

**CLAIM FOR RELIEF AGAINST DEFENDANT DEPUTY WACHHOLZ, SHOTLIFF, POQUETTE, "NURSE MINDY" AND WMMH FOR DELIBERATE INDIFFERENCE IN VIOLATION OF THE EIGTH AND FOURTEENTH AMENDMENT.**

64. Plaintiff realleges and incorporates by reference, all preceding allegations.

65. At all relevant times, Defendant Deputies Wachholz, Shotliff, Poquette, "Nurse Mindy" and WMMH were a "person" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Jimmie Joshua of his constitutional rights.

66. The use of excessive force against Mr. Joshua by Deputies Wachholz, Shotliff, and Poquette, which injured Mr. Joshua's right hip, required immediate medical attention, and that medical assistance was not provided.

67. The Deputies were aware of the pain Mr. Joshua was in as he continuously stated he "was in deep discomfort."

68. When the deputies finally did call for a nurse, the nurse working in the jail ("Nurse Mindy") and WMMH failed to correctly assess Mr. Joshua as he was in excruciating pain from being thrown to the ground by the deputies.

69. The deliberate indifference by the Deputies, Nurse Mindy and WMMH caused Mr. Joshua severe physical, emotional, and psychological injuries.

70. Mr. Joshua was not given proper medical attention for 16 hours causing him to suffer in excruciating pain for all 16 hours until he was at the hospital.

71. By ignoring Mr. Joshua's obvious injuries, Deputy Wachholz, Shotliff, Poquette, and Sergeant McPherson-who was made aware of Mr. Joshua's injury and still refused to provide aid-were deliberately indifferent to Mr. Joshua's serious physical injury in violation of Mr. Joshua's rights as set forth in the Eighth and Fourteenth Amendments to the United States Constitution.

### THIRD CLAIM FOR RELIEF: MONELL CLAIM

72. Plaintiff realleges and incorporates by reference all the allegations in the preceding paragraphs.

73. Dane County lacks policies, procedures or protocols whereby inmates like Mr. Joshua, who suffer from injuries like his, are able to use the toilet while in an isolation cell.

74. The failure to have such a policy caused Mr. Joshua to lie in his excrement and urine for an entire night.

75. Defendant WMMH lacks policies, procedures and protocols with respect to treating inmates like Mr. Joshua who suffer injuries like his. It further lacks policies, procedures and protocols with respect to identifying injuries like those suffered by Mr. Joshua.

76. This failure caused Mr. Joshua to suffer needlessly without medical treatment.

77. Mr. Joshua, who is presently incarcerated, has satisfied all of the requirements under the Prisoner Litigation Reform Act.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

a. Against Defendant Deputy Wachholz, Shotliff, and Poquette in their individual capacity, for compensatory damages, for the severe injuries caused by the use of excessive force against Mr. Joshua, as set forth above, and for the violation of his rights as set for above in an amount to be determined at trial of this matter;

b. Against Defendant Deputy Wachholz, Shotliff, and Poquette for punitive damages for the severe injuries in their individual capacity, as set forth above, and for the violation of Mr. Joshua's rights as set forth above in an amount to be determined at trial of this matter;

c. Against Defendant Deputy Wachholz, Shotliff, Poquette, Sergeant McPherson and Nurse Mindy, in their individual capacities, for compensatory damages, for the severe injuries caused by the deliberate indifference to provide medical aid, as set forth above, and for the violation of his rights as set forth above in an amount to be determined at trial of this matter;

d. Against Defendant Deputy Wachholz, Shotliff, Poquette, Sergeant McPherson and Nurse Mindy, in their individual capacities for punitive damages for the

severe injuries, as set forth above, and for the violation of Mr. Joshua's rights as set forth above in an amount to be determined at trial of this matter.

   e. Against Dane County and WMMH for compensatory damages for the severe injuries, as set forth above, and for the violation of Mr. Joshua's rights as set forth above in an amount to be determined at trial of this matter.

   f. For all costs, disbursements and actual attorneys' fees pursuant to 42 U.S.C. § 1988, and for such other relief as the Court deems just and equitable.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL OF THIS MATTER ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted:

  January 13, 2022

GINGRAS, THOMSEN & WACHS, LLP

s/ *Paul A. Kinne*
Paul A. Kinne
State Bar No.: 1021493
8150 Excelsior Drive
Madison, WI 53717
Telephone: (608) 833-2632
Email: Kinne@gtwlawyers.com